This is an unusual day. We have three veteran counsel. Good morning, Judge Cabranes. Gentlemen. Always glad to see you, Mr. Klayman. It was a pleasure to be in front of you, Your Honor. Okay. This case, really, the key issue in this case boils down to the issue of whether Judge Irizarry was correct in accepting the declarations of Attorneys Rico and Mischella. The government and Judge Irizarry relied upon this Court's earlier decision in LaBeouf. But LaBeouf, it's my position or the appellant's position that effectively the World Trade Center decision, which came about 14 years subsequent to then, really overturned certain elements of LaBeouf when it used language that said the compliance with Section 1746 is definite. The Court, this Court, used the word, the words must. It said, if I can quote from the Court's own statement, it said, An unsworn declaration must reflect the substantive elements set forth in Section 1746, to which the declarant must, one, declare, two, under penalty of perjury, and three, that the sworn statement is true and correct. The declaration submitted by Messrs. Rico and the other one, under penalty of perjury? Yes, it does, yeah. Those, the declaration submitted by Mr. Rico, which is really the key declaration here, only contained, all it said was, and I think it's at A70, A81 of the appendix. It says, Anthony L. Rico, Esquire, pursuant to Title 28U, United States Code, Section 1746, hereby declares under penalties of perjury. At no time does the declaration say that it is true and correct. And at no time does it say that he declares it. Okay? And this Court, in using the language must, obviously the word is going to apply. The Court could have said it should, or it should basically say these things. But it doesn't. This Court used the word must. And must means you comply specifically with the language. And Judge Irizarry's agreeing to accept those declarations, I think, makes those declarations. She should have stricken those declarations under 1746. Now, these declarations were submitted in 2014. And the Court's decision in this case took 5 years. It took 5 years for Judge Irizarry to actually issue a written decision. And as the Court may well know from the history of this case, that decision only came down after I filed a written mandamus. And then all of a sudden this long decision from Judge Irizarry appears. For 5 years, the Rico and Mischella could well have corrected that. And I think there's a Fifth Circuit case that I referenced where the Court talks about correcting a deficient, a defective declaration. They never chose to do this. Judge Irizarry, at a certain point, ordered in the course of her decision regarding supplementing the record, additional discovery, allowed the U.S. attorney and Rico and Mischella to file second, secondary declarations. Those declarations only deal with one issue in the, in Batista's petition for habeas relief. His petition raised ten separate issues. Those declarations by, those secondary declarations by the two defense attorneys only discussed the issue about plea negotiations. So first of all, those declarations should have been stricken by the Court, and Judge Irizarry did not do that. Okay? Secondly, also, this is not an issue where you're relying on the Leboeuf-Lam  I'm sorry, Judge. You're relying on the Leboeuf-Lam case. I'm sorry? You're relying on the Leboeuf-Lam and the World Trade Center case. I'm relying on the World Trade Center case because I think that Leboeuf-Lam is effectively bad law now because the World Trade Center case. Yes, that's correct, Judge. And the World Trade Center case is really pretty specific. If you look at the three cases that the Trade Center case relied upon, those three cases are very, also very specific about what language should be used in the, in complying with Section 1746. I mean, Congress, when they enacted 1746, was careful. They wanted to provide a provision that someone could submit a, effectively a sworn statement. Other than that being provided in front of a notary, they thought it was an affidavit. So compliance with 1746, you need to comply specifically with what the requirements of the statute are. Secondly, I think it's also important to address that the, and this is not a minor point, that the signature that Rico included on his declaration was clearly not in compliance with the rules of the Court. The Court is very specific. The district court, the Eastern District is very specific about what constitutes a valid signature. And we're talking not, we're talking about a signature on a complaint. We're not talking about a signature on some request for relief or a letter to a judge. We're talking about a signature on a sworn statement, supposedly, that addresses a material issue as to whether an individual was denied effective assistance of counsel. What that signature was, if you look at it, it looks as if it was kind of scrawled along on the screen. I'm not sure how it was done. And then the declaration wasn't even submitted ECF. It was sent in to Judge Irizarry's court, and Judge Irizarry's clerk then e-filed it. The rules of the Eastern District are very clear, that a signature is only valid if it includes a pen-written signature. And sometimes, I mean, for example, I always use a blue pen, so it's clear that it's an original signature. Or it's filed by the declarant himself. This declaration by Rico was not filed by himself. It was filed by Judge Irizarry's clerk. It was in violation of the Court's rules. And let's, all of you judges know Anthony Rico, and you know Mr. Michella. This is not a pro se individual. This is not an individual who's just admitted to the bar a year ago. This is a guy who knows the rules, or he should certainly know the rules. And there shouldn't be an exception for any individual, because, you know, the rules either apply to everybody or they don't apply to anybody. And it seems to me that two things here. First of all, the failure to comply with the language of 1746 as interpreted by this Court in World Trade Center. And secondly, the fact that you have a situation where the signature in and of itself was not in compliance means that Judge Irizarry should have stricken the, should have stricken the, those declarations. I think also that another key thing for the Court to look at is when there was a request for discovery and a request for an evidentiary hearing. Judge Irizarry rejected the idea for an evidentiary hearing and then decided she was going to kind of create some kind of amorphous type of hearing where she said, okay, I want the U.S. attorney and Michelle and Rico to submit supplemental declarations, okay, in support of their position. Well, those supplemental declarations deal, at least Rico's declaration deals with the issue of the plea negotiations. My client and five of his family members would claim under oath that they were present during these negotiations so that they conflict, have serious factual disputes with what Mr. Rico said, and to not allow my client to have a full evidentiary hearing under those circumstances I think was serious error. He raised material issues that went directly to the advice that he relied upon when he made a decision to go to trial, which exposed him, as the record shows, to a possible life sentence as opposed to a sentence where he had pled guilty, which would have been substantially less. It exposed him so much that clearly there are issues that I think an evidentiary hearing where the presiding judge had the opportunity to not only review the record, but listen to the testimony of the individuals who filed the declarations and make his or her decision as to how credible they are. Because at the end of the day, gentlemen, we're dealing with this is not a we're not talking about money here, we're not talking about an estate, we're talking about an individual's freedom, liberty, and I don't think anything is more important than when you gentlemen have to decide a case that deals with someone whether they're in prison or not. Yes, sir. Your reference to the World Trade Center case, that's our case, as it were. That's the one you're referring to? Yes, sir. That was a good case. That was a good case. The signature of Mr. Rico at page 101, I finally found it. What exactly is wrong with the signature? Well, if you look at the signature, Your Honor, it clearly looks as if someone had — I don't actually know how this was fashioned. I mean, it also — it could be something that using — You may have just gone to Catholic grammar schools. I'm sorry? Anthony Rico's signature appears to be the well-rehearsed signatures of persons of his generation who went to Catholic grammar schools. That's quite possible that under the stricture of a nun he learned to write really neatly, and I never had that opportunity, so my signature looks like whatever. Your concern is that it's too neat. His signature is simply too neat for — to be valid. Correct. And also the way it was submitted is the other issue, the way this document was submitted, that Judge Irizarry — the rules say it has to be submitted by an individual. It can be — if this had been submitted to the court, Judge Irizarry's court, by Rico himself, it would be another matter, but it wasn't. Judge Irizarry's clerk actually ECF'd this document. I mean, and honestly, you know, ECFing a document is what, five minutes? It doesn't take any time, and I think Mr. Rico certainly has a staff that could have done this. I'm sorry? I thought that I saw something in the record where at some level Mr. Rico filed. He — there was a secondary declaration, okay, that only dealt with the issue of the plea negotiations. That was after Judge Irizarry said when Batista filed his motion for additional discovery, Judge — Not this one at 81. Okay. Correct. And I have reserved, I believe, a few minutes. Thank you very much. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Kevin Trowell for the United States. I represented the government for part of the proceedings below, but not all of them. It's clear why Mr. Batista, first pro se and now represented by Mr. Kleinman, has been so singularly focused on these affidavits, and that's because they're devastating to his claim. He acknowledges here on appeal that their validity is the key issue because on the facts he really has no serious argument. The core of his argument, at least as he's raised it here on appeal, is that this court, sub silentio, overruled another opinion of the court without acknowledging the previous opinion, without citing it, and in deciding a completely different issue. As far as my — I'm aware that is not how this court operates, and there is no reason to believe that any part of the World Trade Center panel, any member of that panel understood that it was overruling a prior opinion of the court. This court could, of course, decide that Leboeuf is no longer good law, but even if the court were to do that, there would be no reason to question the validity of the declarations issued in this case at the time which were issued at a time when Leboeuf was good law. So ultimately, I think we're talking about a technical question about these declarations, and in the government's view, even if there were a problem here with some technical part of this, I note separately that Mr. Batista himself didn't satisfy his own standard in filing his habeas petition, and you'll see his on A-60, I believe, A-80, sorry, his own declaration doesn't meet the standard that he suggests the government declarants were required to meet. So even if there were a problem, I think the solution would be to simply fix it and then address the facts. He concedes that he has no argument on the facts. I'll just briefly note on, in World Trade Center, my adversary notes that in World Trade Center the court cited several decisions, including a Fifth Circuit decision. That Fifth Circuit decision was also cited by the Leboeuf court and distinguished. So the only other circuit opinion that this court, the only other circuit opinion my adversary relies on had already been considered, the court had already determined it doesn't stand for the proposition that he's asserting. Beyond that — Well, the other thing about World Trade Center is that we said inclusion after going through the true and correct language and so on, we said at 488, inclusion of the language under penalty of perjury is an integral requirement of the statute. We didn't say that about the true and correct language. We didn't say that about anything else. Correct. As I read World Trade Center, it's completely in harmony with Leboeuf. And this all stands to reason, because the concept of perjury has as a — the integral part of perjury is that the thing being offered is untrue for the purposes for which it's being offered. So, for example, this Court has cited Black's Law Dictionary defining perjury as deliberately making materially false statements while under oath. The key piece of that is under perjury, not the archaic formulation of true and correct because why not true? Why not correct? Why not some other word? That is a suggestion by Congress which Congress suggested courts should require substantial compliance with. And so the cases that my adversary relies on merely recite the fact that the statute suggests substantial compliance with those elements. They stand for nothing beyond that. Just to very briefly deal with the other issues, on the evidentiary hearing, the Court held — the Court decided to request additional information on an extremely narrow issue, an issue created by Mr. Batista's own faulty memory of when the plea negotiations occurred. Having done that, in an abundance of caution, everyone at the time the Court ordered the additional discovery, everyone agreed. Nobody suggested there were two agreements. The judge asked for additional affidavits to confirm that. And what they confirmed across the board, and I don't — I don't believe he disputes that at this point, is that there was one offer. The problem was that Mr. Batista believed it happened after jury selection, a memory that is, frankly, a bit implausible. But putting that aside, everyone else recalled that this happened on August 27th. Having resolved the issue of how many offers there were, because, of course, if there had been more than one, we would be discussing a different issue. Having resolved that question, there was no need for any further discovery and no need for a hearing. So the Court — Kennedy. Was there any kind of — was there a non-evidentiary hearing? Was there an oral argument? Fisher. Not that I am aware of. Not — certainly not since I've been on the case and in reviewing the docket, I did not see one. Alito. These are two competing — I mean, look, part of the issue is that there seems to be a disagreement. They're competing affidavits about the same set of conversations relating to the plea agreement and to the plea offer. Is that right? Or is that — am I wrong about that? Judge Loyer, you're referring here to the affidavits from Mr. Batista's family. So I think what the judge did with respect to that is as follows. Taking the Rico Declaration, the Mischella Declaration, the Friedman Declaration, and her own experience overseeing the trial, Mr. Batista's perjurious testimony at trial and so on, she — and, beyond that, the, frankly, implausible statements or many implausible statements that Mr. Batista makes in his own submissions, for example, that the government told his lawyers that we knew he wasn't involved in the drug crime, things of that sort, she simply discounted his — his affidavit and said he is not credible. She then said his family's affidavits are based on his — his recitation of the facts. Having — having rejected his recollection of those facts as implausible, it would have been bizarre for her then to say, but nevertheless, his wife or his family member, many of whom were not present for these things, they were nevertheless credible under these circumstances. The interest — obviously, the judge was also entitled to consider the interests of the parties who were involved here and recognize that this is not to fault the family members. In the context — and I hear what you're saying, but in the context, for example, of determining whether a lawyer has acceded to a request to file a notice of appeal, we require some form of hearing. It can be on papers, but we require something. Here, why shouldn't the rule be that when there is understanding, that there is weakness on one side and there's implausibility on one side, and she had the benefit, as you say, of certainly with respect to Mr. Batista assessing his credibility during the trial, but why shouldn't — if there are real disputes about what happened, understanding that one — one side may be less credible given past history, why shouldn't we have a hearing? I mean, I think the answer — the simple answer to that in the first instance is because the Court's cases don't require, and the Court has said repeatedly that a district court is entitled to take this middle way, even when the allegations involve, quote-unquote, off-the-record conversations or a Lafler issue like this one, that a court is entitled in the first instance to take sworn testimony from the participants and — and determine whether further discovery is necessary. I've been involved in these as an AUSA where — where we've done that. Here, there — there is — I guess that's where I'm coming from, because I think a number of people have been involved in these hearings that it's not an elaborate hearing. So — Not necessarily, but — It's not a significant cost. Potentially. But I think — I'm not sure I totally agree with that, because we have — Well, it's not a significant cost if you include the circuit having to review it afterwards. I'm still not totally sure that's true, Your Honor, because if — if the — if the mere allegation automatically triggered the requirement to have a hearing, many of these are resolved pro se. So we don't have CJA counsel on some of them. Mr. Kleinman was retained late here. If we had a hearing in every one, of course, there would be counsel in every one. It's not always the case that the lawyers are local. It's not — it's usually not the case at this point of — of a proceeding that the defendant is local. So we've got the marshal bringing this guy in from some other place. There are significant costs associated with this that — Let me follow up on that. Was there actually a request for a hearing? There was a request for discovery. I'm — I would be shocked if somewhere in the record, Your Honor, there isn't a request for that, just because — And if that request was made, who would — who would have made that request? As I stand here right now, I can't recall if Mr. Batista would have or Mr. Kleinman did. Well, that's kind of fundamental to the line of questions that have been suggested by — by Judge Loyer. Okay. And I think I — I was a former district judge. I am a former district judge. And I always found that in these moments, better to have a hearing, ever so short. A district judge is always in control of the courtroom and the timing. It seems to me we would not be — that hearing might have taken less time than we have taken here in discussing whether there should have been a hearing. So from your point of view — forget judge — the district judge's obligations. I'm not suggesting that your — your statement of the law is incorrect in any way. But it seems to me, as a practical prosecutorial policy, it's in your interest to have such a hearing and have it quickly and give the — give the other side an opportunity to be heard. In fact, it would strengthen your case greatly, as you know, because if you had such a hearing, Judge Irizarry could make conclusive findings of fact, which we would never even think of — of modifying, precisely because they were findings of fact on the record, which might include credibility findings. Isn't that the most efficient way for you to operate as an office? It's possible in cases that may be true. And here, like you said, I wasn't involved in the earliest days of this. Perhaps I would have made a different decision. Perhaps I wouldn't have. No, I'm not suggesting any personal criticism. I'm just suggesting that perhaps as these things happen, when you go back across the river, you might drop a — a memorandum to the — to the chief of the criminal division and or to the — to the U.S. attorney suggesting that you had — there was this extraordinary colloquy. You might even send them the transcript of the colloquy with our compliments. You might even send them — we don't know yet. You might even send them a copy of the opinion saying that there has to be a hearing. I take all of those points, Your Honor. And I — and I appreciate the advice. And I — the only thing I would say to that is you're absolutely right that there are cases where that well may be the more efficient path. Here, I would just respectfully suggest to you that, number one, Judge Irizarry, as all district judges are, is — is busy. She oversaw the trial. Whether she would have been amenable to that is a separate issue. That is, of course, beyond the government's control. Now, if the government conceded that a hearing was warranted, the likelihood of her having one realistically is probably good. But on the other hand, the law is what it is. And in her view, this middle way was appropriate.  Thanks very much. Thank you, Your Honor. Mr. Kleinman is reserved three minutes. And I note with interest, Mr. Kleinman, speaking of signatures on things in the record, your signature at A-1 is the neatest possible signature. I appreciate that. Since it's electronic. Exactly, Your Honor. A couple of observations. First of all, as to the presidential value of World Trade Center as opposed to LaBeouf, the World Trade Center case — and I'll ask a gentleman or whoever reviews this to look at the cases that were cited by World Trade Center on this specific issue. Those three cases, there was two district court cases and a court of appeals case, all made it clear that beyond saying subject to penalties of perjury, there is additional language that's required. And I don't think — my adversary claims that, well, those additional requirements are archaic. Well, whether they're archaic or not, that's what the statute says. No, but you heard my question. When you read the World Trade Center decision, in describing what's the integral  after having gone through the true and correct language and so on in the prior sentence. Yes. And at page 488 of World Trade Center, as I said before, the court said the declarant must and said one, two, and three. It didn't say must one, but can do two. It didn't say must one and two, but can do three. There was no differentiation. So my position, respectfully, Judge, is that World Trade Center provides certainly an excellent guide here. And I think in the context of the issues raised here and the fact that there are — this is not a case. I've had a lot of habeas cases. I've looked at a lot of them. And a lot of the time, it's the Petitioner has a lot of these arguments, but there's nothing in the record that supports his claims. Here, Mr. Batista made the effort of getting additional sworn statements from five individuals. And you're right. You're right, Judge Cabranes. It may have saved a lot of time if Judge Irizarry had said, wait, let's have a hearing, you know, in an afternoon or whatever it is, and make a record as to whether, first of all, who is credible here, who is not credible, bring in the lawyers. This has happened before. And make a record so that if this case ends up back in front of you gentlemen, there's more complete record. But Judge Irizarry chose not to do that. I would, you know, and also I just want to say the fact that she may be busy, as my adversary said, is really, I have to say, is really disappointing. I mean, that's a U.S. attorney position, that judges are too busy so they can't deal with someone's petitioning for their freedom. But I don't think any judge should ever be so busy that the issue of a criminal case where someone's freedom is at issue should say, well, I'll deal with the other cases because I'm too busy to deal with this. That's not an excuse whatsoever. I would, with all due respect to the lower court and to this Court, as I said, this case has been going on for six years now. The petition was originally filed February the 10th of 14. Judge Irizarry didn't issue her decision until I filed the mandamus writ with this Court. Okay. I would, with all due respect to you gentlemen, because I know you guys are busy, okay, ask that if a decision is going to be reached and a remand is going to be made, it be made sooner than later. And I would also, with all due respect to Judge Irizarry, because there's a lot of record below, I believe that I think it's under 2106 of the Title 28. I think it is. You gentlemen can assign it to another judge without making any judgment whether Judge Irizarry was biased or prejudiced against my client. I just think that the record would be a lot cleaner and it would be clear if another judge across the river had the opportunity to review this. That's great. Thank you, Mr. Clement. I want to make sure that it's understood that the colloquy we've had here today is not intended to cast the slightest aspersions on Judge Irizarry or on her decision to hold a hearing, but it's just a question of policy, practice, whatever. Absolutely, Judge. Thanks very much. Thank you, Your Honor. Always a pleasure. Likewise. All right. We'll hear—we'll reserve decision and we'll turn to the—